Okay, next case is number 14-1300, Pure Fishing Incorporated against Normark Corporation. Mr. Vitt, when you're ready. Thank you, Your Honor. May it please the court. I'm addressing first our appeal of the denial of fees in the exceptional case motion in the Cook patent claim. We had two claims in this case, one the subject of the Cross appeal. Our appeal of the denial of fees in the Cook patent case can be boiled down to a simple proposition, and that is when a plaintiff patent holder has no factual or legal basis for a claim of validity, it is an abuse of discretion in that situation for the district court to deny an exceptional case motion. We think this result follows directly from octane fitness, which instructs the courts, the district court, to look at the substantive strength of the party's litigating position. Is your argument that they never had any substantive basis for a claim of validity, or that at some point in time during the course of discovery, the light bulb should have gone off? Both, Your Honor. They never, the facts came out during discovery that they never had a legitimate claim of validity. What we point out in the addressing the second basis under octane fitness, the unreasonable manner of litigation, is that they knew that from the very beginning. They're chargeable with the knowledge of Mr. Cook, who was the inventor of his notebooks, of his colleague Mr. Foote, and they actually wrote a letter to their patent lawyer the day after the very first experiments were done saying, we got this idea and suggestion from our supplier. It was recommended to us by our supplier. So they knew from the beginning, but our argument is, and if you look at your precedent pre-octane fitness, when you look at that objective baselessness prong, which is now the substantive strength basis, this court instructed the district courts to look back at the whole proceeding and decide, is there substantive strength here? Yeah, but now it seems like you're trying to sort of backtrack on what was accomplished in, or what the Supreme Court thought it was accomplishing in octane fitness, which is, you're trying to say, all right, it used to be that you had to have prong A and prong B. We agree that maybe you don't need prong B anymore, but we're going to say every time you have prong A, the district court is bound to make a finding that fees are appropriate. But isn't the whole point that the district court is to look at the totality of all of the circumstances and exercise his or her discretion to determine whether or not fees are appropriate? Your Honor, I don't think we're saying something different. What octane fitness instructs is that a case is exceptional under Section 285, either if the substantive strength is extraordinarily, exceptionally weak, or the case was litigated in an unreasonable manner. Okay, so here the court went through a whole variety of findings, one of which is, you know, pointing out that you stipulated to infringement. So it's not like you've given a basis for the infringement claim. Second, you asserted inequitable conduct and the court found that there was no basis for that assertion, or at least not a sufficient basis for that assertion. So there was an alternative basis for your invalidity claim that even you say you weren't fully aware of until the course of discovery. So why isn't that good enough to say, okay, I'll give you that that aspect of their claim was very weak, but because the other aspects of their claim were not, and I'm not completely convinced that they acted with bad faith in bringing this or fully understood the implications of what the inventor did before he filed, that I'm going to deny this claim. Isn't that exactly what we're supposed to defer to? I don't think so, Your Honor. I think that's inconsistent, frankly, with octane fitness, which says that it's exceptional if either the substantive strength or the manner of litigation is unreasonable or exceptional, but it's also important the scenario you're positing is, really, it doesn't matter how bad that validity position is. This was an inventorship issue where there's just no basis to say that Roger Cook was the true inventor. There never was. Well now, the district court judge didn't agree with you on that. I mean, you're positing the inventorship issue as though their claim to inventorship should have been deemed be frivolous. Yes. Okay, so my understanding of how the district court looked at that, they said, for example, Pure Fishing's arguments based on Cook's possibly flawed recollection, nearly 20 years after the patent had issued, and limited understanding of patent law, as well as That's exactly the finding that I'm challenging. Well, that's what I thought. It might be helpful to really get the hammer close to the nail, for example. Okay. So isn't that the issue in the case is whether or not the judge should have said that I throw all of that argument out. That's unacceptable. That's precisely right. Now, why should I do that? So, Your Honor, the district court, and I'm going to go through this. If we validate what the district court said here, we said the district court, when they said, well, Pure Fishing had a leg to stand on, not a very good one, in the end. If we leave that finding of fact in there, then you don't have a case, right? That's right. Then I lose. Absolutely. So, and the reason I think you should not do that and you should reverse is that the district court ignored all the facts in the case. The district court ignored the law of conception that governs the issue, and the district court ignored But that goes to a possible misunderstanding of the law, the statement that they made. Why isn't it all knitted together in this few sentences that the district court said? And that, for her mind, meant that it was a non-frivolous allegation of advantage. Well, we have to look at the underlying facts, which she did not do. The judge did not discuss the underlying facts at all in her order. She did not discuss the law of conception in her order, and she, very importantly, did not discuss the requirements of the claim, the patent claim that we're talking about. But we can't assume that she didn't understand the law of conception. She granted you some rejection on that point, right? We can certainly assume that she understood it. What we're trying to get at is an abuse of discretion is, did she make a clear mistake on the facts, or did she make an error of law in her judgment? This is a mixed question of law and fact, her judgment that the claim was not exceptional. You're trying to attack someone with a statement against interest that they've made, which is what you want to do with Cook. And if the deciding official says, well, I understand that you think it's a flam-dunk statement against interest, but maybe Cook didn't know what he was saying. Didn't she see Cook? Did Cook testify? Cook testified. Perhaps making a judgment about his demeanor, maybe this old guy who can't quite keep things straight. Isn't some of that possibly filtering into a discretionary poll? That's not the issue, though, Your Honor. The issue is, what was the evidence concerning conception and derivation? And it wasn't just his testimony, although his testimony was crystal clear. It was also his notebooks. And so what we have here is we have a claim, the patent claim requires heat stretching under certain parameters of braided fishing line. And it's undisputed that the supplier, DSM, recommended to Mr. Cook's colleague, Foote, that you should use heat stretching to increase tenacity before Cook's conception. And it was undisputed that the supplier, DSM, actually did the process exactly as in Claim 1. But there are details, specific details, hardness and others, in the claim that nobody has said were communicated to Mr. Foote to start with. No, that's not right, Your Honor. The claim, the record is that the cookbook that DSM gave Mr. Foote, and it's recorded in Mr. Foote's notebook, matches Claim 1 exactly, matches Claim 4 and 5 exactly. Mr. Cook so testified. He's got the durometer hardness characteristic, for instance. That's in the other case, Your Honor. There isn't a hardness element in the Cook patent claim. Are you sure? Yeah, the Cook patent claim is... Okay, that's Kelly, you're right. That's Kelly, yeah. Sorry, Your Honor. So, what Cook said over and over again in his notebook, it's all documented in his notebook, it's not just his testimonies, the very first time I did heat stretching, the very first time, was October 5th, 1994. And when I did that, that's my conception date. And when I did that heat stretching work, I got that idea from DSM. It was not my idea. Well, let's go back to the same theme. Still, there are specifics in the Cook patent as well, that nowhere in the record does it say that you should go from a specific venue to another, or to the specific details, at least in the subordinate claims. That's not correct, Your Honor. The record is that Claims 1, 4, and 5 are the only asserted claims, and Claims 1, 4, and 5, the DSM recommendation, and what DSM actually did, as recorded in Foote's notebook, and as testified to by Foote and Cook, matches Claims 1 exactly. Well, but the court felt that Foote's testimony was somewhat contradictory. There was testimony both from DSM's own Director of Research and your expert, that said it wasn't clear whether or not DSM had conceived of this before Cook did. That's not the record, Your Honor. DSM's Director of Research, Mr. Van Gorp, had no knowledge of this recommendation and this prior heat stretching. Somebody at DSM did the exact process that's recorded in Foote's notebook. There's no dispute about this. Mr. Van Gorp, their expert, DSM's former Director of Research, had no knowledge of that. All he said was, we didn't have independently developed know-how about stretching graded fishing lines in this particular way. We've got to remember the patent claim is very broad and very basic. Mr. Van Gorp never disputed at all that DSM recommended exactly this process to Mr. Foote, and that Cook said, it wasn't my idea, it was DSM's idea. I followed the cookbook given by DSM exactly, and I did that because they recommended it. That was the evidence in the case. He admitted he wasn't the inventor over and over again, and it's documented that he wasn't the inventor. It's important for this court to understand the district court's abuse of discretion is, she doesn't deal with any of that evidence in the exceptional case motion. The only argument raised by Pure Fishing to counter that was to bring up this May 1993 work that Mr. Cook had done. Mr. Cook testified flat out, that's not my conception. That was not heat stretching. It didn't match the elements of the claim. It was really a misleading argument to even bring. The judge abused her discretion because she didn't deal with the facts of the case, didn't deal with the law of conception, and did not even address the claims. And I see I'm in my rebuttal time, so I'll stop. Thank you. Let's hear from the other side. Let's hear from Mr. Mannix. May it please the court. Thank you, Your Honor. This appeal presents an attempt by a partially successful litigant below to shift fees in two cases in which there was reasonable litigation conduct and reasonable evidence. The focus of the earlier questioning was on the Cook case, the line patent, and I'll turn there to begin with. The standard, of course, has changed with Highmark and Octane Fitness, but it is still now a totality of the circumstances review of the record by the district court and its discretion to determine if a case stands so far out of the ordinary, so unreasonable, that it should award the fees. Should we, I mean, I see two problems with the district court's analysis. One is that the district court, that your friend on the other side is correct, the district court certainly didn't walk through all those facts when it said that the claim of inventorship wasn't so frivolous as to be outside the bounds. It did not discuss the Cook's notebooks. It did not discuss whether or not there was evidence that there had been preconception. Should we say, well, maybe the trial court is entitled to deference to the exercise of her discretion, but she didn't really exercise it. No, Your Honor. The trial court did exactly that. If you look at the evidence that the trial court looked at, it included the fact that Mr. Foote testified prior to the meetings with Allied Signal and DSM, Pure Fishing was concerned about keeping close to its vest its work on heat stretching. That was his testimony. Now, is there contradictory testimony? Certainly. As Mr. Foote pointed out, there is some. It also pointed out that Mr. Cook's testimony was very confused about what conception meant, very confused about what the legal standard was for conception. He consistently testified, yeah, I tried some of this stuff that Foote said DSM had suggested, but what they had was commercially impractical. I had to keep working. We didn't get an invention. That's why it took another year. That's why I ran these hundreds of experiments. It was not dispositive testimony. It was not admission of a party, as Norm Marcus tried to argue at a point. It wasn't from a 30 v. 6 deposition. The May 1993 documents, the characterization of them in the record that it's not heat stretching, that's inaccurate. The braided line was stretched under heat on a different mechanism, and it changed its properties. But the properties looked for in the patent were not checked at that time. When checked later, it actually occurred. That did change. But that didn't happen at that time. That's correct. But it happened in May of 1993. Mr. Van Gorp's testimony here is also fair. He was the director of research for that company. He was in the Netherlands in October of 1994. He attended some of the meetings. Mr. Foote attended all the meetings. They both testified. DSM didn't invent this. Now, that's a contest of evidence. That's what we see in a case like Bianco, which is an unreported case, I hear, where there's a contest of evidence. Some of it's cooperative. At the end of the day, the district court said your evidence isn't strong enough. Theirs is a lot stronger. They get summary judgment on this issue. The other issue that concerns me is the fact that the district court seemed to put some weight on the fact that this whole invalidity issue arises in the context of an affirmative defense. Does that matter? To an extent, I think it does, Your Honor. The burden of proof is an appropriate thing to examine as part of the context. This court said so pre-octane fitness and nothing in octane fitness, or high mark, said you should ignore it. Okay, and I think your friend on the other side would agree with that proposition. What he's saying is beyond the burden of proof. Did the district court give undue weight to the fact that it arises in that context? I don't believe so, Your Honor. I think the district court's analysis was you have the burden of proof on this. Not only did you have the burden, but it was by clear and convincing evidence. So when I go and weigh this evidence and go yours is stronger, theirs is somewhat weaker, that doesn't mean they should stop necessarily because you've got to do this by clear and convincing. Yours has to be somewhat stronger. As a matter of fact, it's got to be a good bit stronger. And ultimately you got there. I'm sorry, Your Honor. Not only is yours stronger, mine doesn't have to be as strong. That's correct. Mine doesn't have to be as strong. Isn't that really what the judge was saying? Where the burden is clear and convincing evidence, then for the patentee to try to hang on to an inventorship claim, a dab will do you. You don't have to have a really strong argument. I think that's exactly correct, Your Honor. And I think that was appropriate for her to do because that is the burden of proof with this affirmative defense and how it compares. And I don't think she overstressed that. Before your time's up, you might want to switch to the other patent. Yes, Your Honor. I think you have a juxtaposition in review. District court did exactly what she should have done with Cook, focused on only a couple of things in the Kelly patent case, namely the Markman hearing, the motion to reconsider the Markman result, and the voluntary dismissal. There are a couple of important factors in the Kelly case that make that more limited review something this court should reverse. Frankly, not remand, but reverse based on the record that's there. Although argued to the district court at every stage, the pre-hearing investigation, which found that the accused product contained the chemicals, was ignored. That's an important step in justifying litigation. And, Your Honor, understand that two months that the court had already found exceptional and awarded feasible aren't at issue here. This is what happened before November 3, 2011, from the filing of the suit until the Markman hearing. And what happened in that period was there was a pre-suit investigation. There was an argument based on the plain words of the claims, which do not include the word average, that the presence of a small number or a single, perhaps, of these molecules could affect the change in properties, that the accused product's advertising said they were the same as, or functioned the same as, the products covered by the patent. In other words, it's a reasonable course of litigation. And what pure phishing did was when the Markman hearing went against it and reconsideration went against it, voluntarily dismissed the case with consent of its opponent, saving us all a lot of money for two reasons. That Markman result made it very difficult for pure phishing to proceed with that undefined term average. Whether it's the molecular weight, whether it's the degree of polymerization, the court would not tell us, despite the request on reconsideration. And two, discovery shows sales of the accused products were fairly minimal. So why would we want to make that fight and spend that money? And yet the district court agreed with Normark that the fact of doing the right thing, voluntarily dismissing, gave credence to the fact that this was an exceptional case. But ultimately the court said that, putting aside the voluntary dismissal, the court said that as to the Kelly claim, that it made a factual finding that pure phishing should have recognized the extreme weakness of the Kelly claim prior to the date that Normark filed its answer. That's a lot earlier than the dismissal occurred, and there was all the stuff that happened afterward with respect to the Markman hearing, which she found to also be unreasonable conduct. So why isn't that factual finding enough to support her conclusion of exceptionality? Because I believe it's contradictory of this court's case of what is a proper pre-filing investigation from QPharma, from a case like Eon, which we cite in our brief, which is again an unreported district court case, as a lot of these are. Pure phishing did it. Pure phishing found the chemical. Pure phishing found the accused product fit within the claims and proceeded with a reasonable, I think this is where the district court, and remember the district court on its first analysis said, your view of the claim, that one or a few of these molecules might affect that property change, was reasonable up until the Markman hearing. On remand, and I do not believe anywhere in the district court's order, Your Honor, perhaps the opponent will come to point it out to you, she pointed to anything that changed to suddenly make it unreasonable. Now that's the current standard. That wasn't the objectively baseless or subjective bad faith. She was looking at, did you have a reasonable argument in your claim construction until my Markman ruling? Yes, she said. But then she reverses herself on the re-review. Right, so she said after looking back at it, she said that she believes that the record suggests not only that pure phishing's claim construction, for which no reasonable support was ever offered, was objectively baseless, but also that pure phishing should have understood from the outset that the Kelley claim was dependent on that flawed claim construction. Again, I don't know how you get around that determination. I think simply because, Your Honor, in that record, the flawed claim construction as the district court sees it, certainly she was entitled to make that ruling at Markman and up to us to appeal if we wanted to. But prior to that ruling, if you look at the plain language of the claims, an extremely long-chain polyhydroxyl molecule can change the physical properties. That's what was claimed in that patent. The court disagreed at the end of the day. But this court said in Markdex that if claim construction, you can't just say, well, I put forward a claim construction and I get the right to appeal it. If the claim construction is itself objectively baseless from the start, which this court found that it was, then that can be sufficient. The court found that on a second review when it didn't find it on the first review, Your Honor, and articulated no real reason for what the difference was. That, we believe, is an abuse of discretion. First time through, looked at that whole period and said, that was a reasonable argument up until this point. Second time through said, eh, on second thought, not reasonable. I looked at it again. Where in the orders articulated why it became unreasonable, it's not. Again, with respect to the factual analysis, your own independent lab, in the best case scenario, found what? 3% of the long chain molecules were present in the infused product. But you essentially brought a claim as if all of them were present. You can see that 97% were not present. Well, that's correct, Your Honor, but nowhere in the... Nothing in that patent would suggest that 100% of the molecules would ever fall within this definition. The vast majority of the material, Your Honor, claims is always going to be shorter chain molecules. It's the presence of a certain number, and that was the argument between the parties at the end of the day. A single molecule will do a few molecules. An average of molecules that show there's enough of them, which is what Normark prevailed on ultimately with the district court, was you're going to have to have an average, and that average is going to have to show nobody ever thought, including the district court, that 100% of the molecules in one of those lures would fall within the definition. They're not going to. It's not going to be close. It doesn't take a lot to do it. The argument was, how much? Normark prevailed in getting an undefined average, which is something this court, in its unreported decision in BIOCS, which we cite in the brief, said, that's pretty important. When a court gives you an undefined claim term and you start to struggle with it, it's hard to say you're undefined. That was completely distinguishable, because in this particular case, the court made a specific finding that it didn't matter how you calculated the average, because if you were operating under an average, you lose. I don't think the court reached that conclusion, Your Honor. I think the court did reach the conclusion if you're operating under an average, you're going to have a real hard time. We didn't reach that conclusion. But that's not specifically said. It made absolutely no difference to the strength of your claim as to how you calculated an average, because if you're stuck with an average, you lose. And once the word average got in there, what did my client do? The word average is not in the claim. It was added to the claim on claims of obstruction by the court. Average appears nowhere in the patent. When it was read into the patent by the court, you're officially dismissed as guilty. Do you want to say anything about the across the field? Your second issue? Well, I think that was the Kelly patent, Your Honor. That's what I switched to just then, and I'd say that I used a tremendous amount. But are there any other questions? Thank you very much. Okay, you're welcome. All right, Mr. Vitt. Thank you, Your Honor. So I want to just reply briefly on the Cook patent issue and try to put a real fine point on it if I could, and I really do urge you to look at the record of the briefs. The argument, the only argument ever made that they had a good faith argument was this May 1993 work was prior conception, and there isn't a single fact to support that. Mr. Cook testified that May 1993 was not his conception. His documents showed that that May 1993 work did not involve stretching. He explained that he was holding the line at a consultation, and it is a false statement by Mr. Manos to say that that work involved heat stretching. There is no fact on which the judge could reasonably have based a decision that this claim wasn't frivolous, and for that reason we ask the court to reverse on the Cook patent claim. On the Kelly patent claim, the fundamental problem we have with the entire argument is it's a misstatement of the district court's orders and what happened the first time around the court engaged in 38 pages of discussion of the Kelly claim and found that the Kelly claim construction of one molecule advanced by pure fishing was objectively baseless. So that finding had already been made, and she didn't have to revisit that. The reason she didn't grant fees the whole time is because under Brooks Furniture... Second leg. Second leg, and she found that before November 3rd they had a basis for believing that they could have made an argument. When it came back to her, the only issue in front of the court was, should I give you additional fees under the new octane fitness standard, and to our mind that was an easy call because you've already found objective baselessness, that's law of the case, it hasn't been appealed, and so the court found. The amount of our fees is within her discretion. The amount of our fees was never debated, and so the arguments that you're hearing today, first of all, they weren't presented to the district court on the motion on remand, so therefore they're waived, and second of all, it's law of the case that it's objectively baseless, the claim was objectively baseless, and then the third point, if you do get to the merits, we told them at the start of the case, we use one polymer, it's PVA 117, it's way outside of the range, and we don't infringe, and yet they press forward. During the claim construction proceedings, we had an expert explain that anyone of ordinary skill would understand when you use molecular weight and degree of polymerization numbers, that's an average, it has to be, otherwise it has no meaning. The lower patent doesn't make any sense unless it's an average, as explained in our briefing, and the distinction of innovate doesn't make any sense unless it's an average. So, thank you, Your Honor. We do respectfully request that you reverse the Cook claim and send it back to the district court, and then affirm the finding on the Kelly claim. Thank you. Okay, thank you, Mr. Vick. Mr. Vanos, you get the last word on the cross. Thank you. Normark also wants it both ways in this case, to punish pure fishing for voluntarily dismissing the Kelly patent, and to punish pure fishing for not voluntarily dismissing Cook after his deposition. That can't be the way Section 285 exceptionality works. To say that the May 1993 document does not involve heat stretching is false. It does involve the process of heat stretching through a machine, the way defined in the patent. But it involved a braided fishing line with weights on each end, being heated with the weights hanging and stretching it, and some change in properties was observed. Which is to say, pure fishing was experimenting in the area long before it met with DSM. Beyond that, no, it's no further evidence. Admittedly, there was no measurement of the change in tenacity, which is ultimately what is claimed in the patent. Parties know that. But to say it wasn't stretched and it wasn't heated is false. And the record says it. You can look at the document yourself and see what happened in the resulting memo that Mr. Cook sent to Mr. Foote. Mr. Foote and Mr. Van Gork believed that DSM did not conceive the invention, and Cook did. Cook claimed at times that he conceived the invention and certainly believed he conceived something. This is a tacit conflict of evidence. And finally, on the Kelly case, it cannot be the law of the case when there's been an intervening change and the order was restricted to a particular child. There was a new review. That finding can't be the law of the case. The intervening change argument you're making is Octane, right? But Octane didn't change the standard for making a finding of objective baselessness. And the only thing that they're saying is law of the case is the factual finding of objective baselessness, right? That finding was for a period of time that occurred from November 3, 2011 on. The court in that first order didn't say it was objectively baseless from the beginning. Indeed, the court pointed out both parties were struggling as the defendant came forward with an all-polymers theory that was ultimately scrapped by the defendant. So you would conceive that law of the case is that it was objectively baseless for some period of time? Yes, Your Honor. From November 3, 2011, we can't take any other position. The court made the finding. We did not appeal. From November 3, 2011 to January of 2013, when the case was dismissed, there was a finding of objective baselessness. But prior to that time, there was not one that was the law of the case. And that's the issue where the district court flip-flopped without articulating a reason for you, thereby abusing its discretion. And in the record, there's not a reason to change. Okay. Thank you very much, Your Honor. Thank you. Thank you both. The case is taken under submission.